**In re Richard Wayne and Rebecca Jean GEE, Debtors.**

**Bankruptcy No. 90–02469–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Feb. 12, 1991.

Edward P. Sullivan, Tulsa, Okl., for debtors.

E. Carlton James, Tulsa, Okl., for Riverwest Federal Credit Union.

Gary Hammond, Tulsa, Okl., for trustee.

## ORDER GRANTING TRUSTEE'S "OBJECTION TO EXEMPTION"

MICKEY DAN WILSON, Chief Judge.

On December 11, 1990, there came on for hearing the Trustee's "Objection to Exemption." At said hearing, evidence was introduced and received, and arguments of counsel heard; thereafter, the matter was taken under advisement. Upon consideration thereof, and of the record herein, the Court, pursuant to Bankruptcy Rules 7052 and 9014, finds, concludes and orders as follows.

### FINDINGS OF FACT

On August 27, 1990, Richard Wayne Gee and Rebecca Jean Gee ("Mr. Gee;" "Mrs Gee;" "debtor(s)") filed their voluntary joint petition for relief under 11 U.S.C. Chapter 7 in this Court.

Debtors' schedule of current income and expenditures reports gross income of $1,960.00 per month, all of it from Mr. Gee's regular wages; and further reports that Mr. Gee "receives annuity from his employer as a result of a sales bonus in the amount of $5,555.56 per year." Debtors' schedule of current income and expenditures and statement of financial affairs ¶ 2a reports that Mr. Gee is employed by "Pepsi Cola, Inc." as "route driver, salesman." Debtors' statement of financial affairs ¶ 2d reports income in 1988 of $33,384.00 which "includes annuity" and in 1989 of $35,743.00 which "includes annuity."

Debtors' schedule B–2s reports, as Mr. Gee's separate property (designated as such by the letter "H" for "husband"), a "20 years annuity from his employer at the rate of $5,555.56 per year as a sales bo-

nus," and values the entire property at "$5,555.56." Debtors' schedule B–4 claims the same annuity, similarly valued, as Mr. Gee's separate exemption (designated as such by the letter "H" for "husband"), and notes that the annuity is "exempt as wages/debtor to reaffirm for debtor's personal use." Said schedule B–4 also claims a joint exemption (designated as such by the letter "J" for "joint") of $100 cash, said to be "for debtor's personal use." These and all other exemptions claimed on said schedule B–4 are said to be exempt pursuant to "OKLA.STATS., Tit. 31."

Judi E. Beaumont was appointed and continues to serve as Trustee of debtors' bankruptcy estate ("the Trustee").

On October 2, 1990, the Trustee filed her "Objection to Exemption" herein, objecting to exemption of "20 year annuity at the rate of $5,555.56 per year ... based upon the unconstitutionality of Okla.Stat., tit. 31, § 1(A)(20) due to the supremacy preemption provisions of the Employee Retirement Income Security Act of 1974 over the Oklahoma Statutes attempting regulation of such pension plans." Said objection was set for hearing on November 20, 1990, continued to December 7, 1990, continued again and heard on December 11, 1990, and thereafter taken under advisement.

Mr. Gee has been an employee of "Pepsi Cola, Inc." or "PepsiCola" or "PepsiCo" since at least 1987. (Mr. Gee's employer will be referred to hereinafter as "PepsiCo," whether or not that is the correct name of the corporate entity.) In 1987, PepsiCo conducted an "incentive contest" among its employees. The contest was in the nature of a sweepstakes, awarded on the basis of performance on the job; the award was an annuity purchased by PepsiCo for the benefit of the winning employee(s). There were 18 winners in 1987, one of them Mr. Gee. Each of the winners, including Mr. Gee, was issued an annuity purchased by PepsiCo from John Hancock Mutual Life Insurance Company.

The awards were announced on or about June 21, 1987. The annuities were issued some time later. An undated "Application for Annuity ..." indicates that PepsiCo had paid $52,744.14 for an annuity to be issued on September 29, 1987. The "Proposed Annuitant" was Mr. Gee. The "payments desired" were as follows:

> 20 payments of $5,555.56 per year ($111,111.20) beginning October 1, 1987, and continuing annually thereafter through and including October 1, 2006.

> In the event of death of the initial payee prior to October 1, 2006, the remaining payments under this Contract shall be paid to the Beneficiary below ... [naming Mrs. Gee].

There was a "special request," as follows: "The owner absolutely and irrevocably assigns to the annuitant the payments described above." See exhibit 6.

The "Individual Annuity" actually issued pursuant to the application stated on its cover page that

> John Hancock Mutual Life Insurance Company agrees, subject to the conditions and provisions of this contract, to pay the Annuity Payments ... as specified on page 3 ... in consideration of the application and payment of the Single Premium.

"This contract" was stated to include "this and the following pages." The following page labeled "2. Contract Specifications" provided in its entirety as follows:

| | |
|---|---|
| Initial Payee: | Richard Wayne Gee |
| Single Premium: | $52,744.14 |
| Date of Issue: | September 29, 1987 |

*Schedule of Annuity Payments*

20 payments of $5,555.56 per year ($111,111.20) beginning October 1, 1987 and continuing annually thereafter through and including October 1, 2006.

In the event of death of the Initial payee prior to October 1, 2006, the remaining payments under this Contract shall be paid to the Beneficiary below:

> Rebecca Jean Gee
> 9925 W. 91st, Lot # 64
> Sapulpa, Oklahoma 74066

The owner absolutely and irrevocably assigns to the initial payee, or its Beneficiary, all of the above-mentioned payments.

Other contractual provisions were as follows:

### 3. OWNER

The Owner will be as shown in the application unless changed by you.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

You may change the Owner by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not the Owner is alive at the time of the acknowledgement. A change shall be subject to the rights or any assignee of record with us, and subject to any payment made or action taken by us before the acknowledgement.

### 4. CLAIMS OF CREDITORS

The annuity payments under the contract will be exempt from the claims of creditors to the extent permitted by law. They may not be assigned before becoming payable without our agreement.

### 5. ASSIGNMENT

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

### 6. INCONTESTABILITY

This contract shall be incontestable after 1 year from its Date of Issue.

### 7. THE CONTRACT

The entire contract between the applicant and us consists of this contract and the written application. A copy of the application is attached at issue. All statements made in the application shall be deemed representations and not warranties.

This contract is not entitled to share in any of our divisible surplus.

Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the contract, or to extend credit or to make an agreement for us.

Pursuant to ¶ 7 just recited, the written application was appended to the "contract" proper. See exhibits 5, 6.

According to John Hancock's attorney, "We ... classify these contracts a[s] being Single Premium Immediate Annuities," exhibit 3. According to other John Hancock personnel, the twenty payments are "guaranteed" and, should the annuitant die before completion of the scheduled payments, John Hancock "will pay the remaining annual payments to the beneficiary named in the application ...;" but "This is subject to Federal Taxes under the IRS rules and produces a W–2P at year end" which "should be used in filing your Income Taxes," exhibit 2. According to an officer of the Pepsi–Cola Bottling Company of Tulsa, "This award is considered taxable earnings each year and has absolutely nothing to do with retirement or pension plans," exhibit 1.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are incorporated herein by reference.

### CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (O), 11 U.S.C. § 522(b), ($l$), § 541(a)(1), (c)(2).

■ A preliminary question is whether the annuity ever became property of the estate under 11 U.S.C. § 541; for, if it never entered the estate, there is no need to exempt it out of the estate under § 522. 11 U.S.C. § 541(a) provides in pertinent part that

> The commencement of a case under ... this title creates an estate ... comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case ...

Whatever interest debtors had in this annuity pre-petition, becomes property of the estate and is "owned" by the estate's

Trustee post-petition. This general inclusion of debtors' pre-petition interests in their bankruptcy estate is subject to a special exception set forth in 11 U.S.C. § 541(c)(2), which provides that "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Although the parties have not briefed or argued this matter, it appears to the Court that there is no trust here at all, since this annuity contract creates an *in personam* right to payments but does not exhibit any intent to create a trust, or constitute either PepsiCo or John Hancock as trustees, or establish any identifiable trust *res, In re Riley*, 91 B.R. 389 (B.C., E.D.Va.1988); *In re Brown*, 86 B.R. 944 (N.D.Ind.1988); *In re Miller*, 16 B.R. 790 (B.C., D.Md.1982). Accordingly, the Court is satisfied that this annuity is property of the estate under 11 U.S.C. § 541(a)(1) and is not excluded therefrom by 11 U.S.C. § 541(c)(2). The extent to which debtors have a present right to annuity payments which can be realized by the Trustee is not before the Court at this time; the Court determines only that, whatever debtors' present interest in the annuity contract and in any payments thereunder may be, it is property of debtors' bankruptcy estate. The Court proceeds to consider whether the annuity may be exempted from the estate pursuant to 11 U.S.C. § 522.

■ 11 U.S.C. § 522(b), 31 O.S. § 1(B) provide that debtors may claim exemptions only under State law or Federal nonbankruptcy law. The directions on Official Form No. 6, Schedule B–4, require debtors to "Specify statute creating the exemption." Debtors claim all exemptions listed on their Schedule B–4 under "OKLA. STATS., Tit. 31." 31 O.S. § 1(A) alone lists twenty-one (21) subdivisions, each specifying a different possible claim of exemption, ranging from chickens to pension plans; other statutes in Title 31 modify or supplement these basic exemption provisions in various ways. Several of these provisions could apply in the alternative to the same items of property; and debtors do not indicate which of these many potential grounds of exemption apply to their particular items of property. There is no reason why the Trustee, the debtors' creditors or this Court should be forced to guess what legal basis may exist for each of debtors' claims of exemption, in effect doing debtors' attorney's work for him. Since no party in interest asked that these insufficient "claims" of exemption be stricken, the Court will pass the matter by—this time—and will proceed to consider those possible grounds for exemption indicated, in one manner or another, by the documents filed by debtors or by the Trustee.

■ Debtors' Schedule B–4 states that the annuity should be "exempt as wages." Mr. Gee has a right to continue receiving the annuity payments even if he quits working forthwith, indeed (it would appear) even if he is fired "for cause." Under such circumstances, the annuity payments cannot reasonably be described as "wages." Although debtors' attorney did not specify the statute, the Court observes that 31 O.S. § 1(A)(18) exempts "Seventy-five percent (75%) of all current wages or earnings for personal or professional services earned during the last ninety (90) days ..." Exactly how this statute should be applied to exemption of present and future annuity payments is not clear. In any event, 31 O.S. § 1(A)(18) does not stand alone. 31 O.S. § 1.1 further provides for exemption "by reason of undue hardship [of] that portion of ... earnings or professional services necessary for the maintenance of a family supported wholly or partially by the labor of the debtor." Both 31 O.S. § 1(A)(18) and § 1.1 are qualified in turn by 31 O.S. § 1.3, which provides that

The determination and order issued by the court pursuant to a hearing requested under Section 1.1 of this title shall not take into consideration any total gross family income which exceeds one hundred twenty times the federal minimum hourly wage prescribed by Section 6(a)(1) of the Fair Labor Standards Act of 1938, U.S.C. Title 29, Section 206(a)(1) as amended and in effect at the time the earnings are payable or the equivalent for pay periods other than one (1) week.

The excess amounts shall not be subject to the seventy-five percent (75%) wage exemption as provided in paragraph 18 of subsection A of Section 1 of this title or due to undue hardship.

The Federal minimum hourly wage prescribed by 29 U.S.C. § 206(a)(1), effective from April 1, 1990 to March 31, 1991, is not less than $3.80 per hour, which would amount to wages of approximately $1,824 per month. Debtors' actual income is questionable, since their Schedule of Current Income and Expenditures indicates a salary of about $23,520 per year plus a yearly annuity payment of $5,555.56 for total annual income of only $29,075.56, while their Statement of Financial Affairs ¶ 2d indicates annual income in recent years of $33,384 to $35,743. But even the lower figure given in debtors' Schedule of Income and Expenditures indicates gross income of $1,960 per month, which is already greater than the maximum statutory wage exemption of $1,824 per month. If these exemption statutes apply to these annuity payments at all, they would not exempt any portion of the annuity payments over and above Mr. Gee's regular wages. For all these reasons, debtors' claim of exemption of the annuity as "wages" cannot be sustained.

 The Trustee objected to the claim of exemption on the supposition that it might be based on 31 O.S. § 1(A)(20), which exempts "any interest in a retirement plan or arrangement qualified for tax exemption purposes under present or future Acts of Congress ..." The Trustee proposed that any such exemption is preempted by Federal law, namely the Employment Retirement Income Security Act of 1974 (ERISA), and is therefore inapplicable and ineffective. But this annuity is not a "retirement plan" any more than it is "wages." Debtor has a right to receive the payments even though he has *not* yet retired; he enjoys the right whether he retires or not; and the right was never offered to employees at large for purposes of retirement, but to a select few employees as a reward for salesmanship. The officer of the Pepsi–Cola Bottling Company of Tulsa was entirely correct when he declared, "This award ... has absolutely nothing to do with retirement or pension plans." Even if the annuity was in some sense a retirement or pension plan, there is no showing that either the annuity premium or the annuity payments are tax-exempt; and the evidence affirmatively demonstrates that the annuity payments, at least, are not considered tax-exempt. A plan or arrangement must be tax-exempt to qualify for exemption from creditors under 31 O.S. § 1(A)(20). Since the annuity would not be exempt as a tax-qualified retirement plan under 31 O.S. § 1(A)(20) even if that statute did apply, there is no need to consider whether the statute applies or not.

Since the debtors' present interest in the annuity is property of the estate and is not exempt on any basis claimed by debtors or suggested by the Trustee, debtors' claim of exemption of their present interest in said annuity or any payments thereunder must be, and the same is hereby, denied and disallowed; and the Trustee's objection to exemption must be, and the same is hereby, granted.

AND IT IS SO ORDERED.