**In re William D. MEYERS, Debtor.**

**Bankruptcy No. 90–01855.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 3, 1992.

Gordon R. Barry, Toledo, Ohio, for debtor.

William T. Goslee, Bellefontaine, Ohio, trustee.

Martin J. Witherell and Mary Ann Whipple, Toledo, Ohio, for Contractors Equipment Rentals, Inc.

Vaughn Hoblet and Thomas Tucker, Toledo, Ohio, for First Federal Sav. & Loan Assn. of Toledo.

Laurie J. Pangle, Toledo, Ohio, for Fifth Third Bank of Toledo.

Thomas J. Schank, Toledo, Ohio, for Kypros Diacou.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Objections to Debtor's Claim of Exemptions: to wit, the Lottery Proceeds. At the Hearing, the parties presented the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed those arguments, the written briefs on the issue, and the relevant case law, as well as the entire record in this matter. Based upon that review, and for the following reasons, the Court finds that the Objections should be sustained.

## FACTS

William D. Meyers [hereinafter "Meyers"], Debtor, won Two Million Ten Thousand Nine Hundred Seventy-two Dollars ($2,010,972.00) from the Ohio Lottery drawing on April 7, 1984. Meyers was to receive yearly payments of in the gross amount of One Hundred Thousand Five Hundred Forty-eight Dollars and Sixty Cents ($100,548.60), beginning in April, 1984, and terminating in April 2003.

Meyers was sued in the Wood County Court of Common Pleas by Contractors Equipment Rentals, Inc. [hereinafter "CERI"]. Judgment was rendered against Meyers on September 1, 1989. CERI attempted to execute on its judgment by attaching one of the lottery proceeds checks. The Wood County Sheriff seized the check in the amount of Fifty-six Thousand Four Hundred Thirty-eight Dollars ($56,438.00) and remained in possession of it, awaiting further direction from the Wood County Court.

On June 1, 1990, Meyers filed a petition for Bankruptcy under Chapter 11 of the Bankruptcy Code. On December 21, 1990, the case was converted to one under Chapter 7 of the Bankruptcy Code. Meyers sought to exempt the check seized by the Wood County Sheriff, as well as his lottery proceeds payable over the next thirteen (13) years. Meyers asserted that the proceeds were an annuity as defined in Ohio Revised Code Section 3911.10 and, therefore, he was entitled to his exemption.

This Court entered an Order on November 21, 1990, directing the Wood County Sheriff to return the lottery proceeds check to the Ohio Lottery Commission. The

Court then ordered the Ohio Lottery Commission to reissue the check payable to the "Estate of William D. Meyers" and send it to Ohio Citizens Bank, which would deposit it into an escrow account bearing the same name. The Court also ordered the Ohio Lottery Commission to make all future lottery proceeds payments in the same manner until further order of this Court.

William Goslee, the Trustee in Bankruptcy [hereinafter "Trustee"], CERI, and First Federal Savings and Loan Association [hereinafter "First Federal"] each filed an objection to the Debtor's Claim of Exemption. They argued that the lottery proceeds constituted property of the estate and that the Debtor was not entitled to his claimed exemption as the lottery proceeds were not an annuity or a spendthrift trust, as defined by the Ohio Revised Code.

Kypros Diacou [hereinafter "Diacou"], an unsecured creditor, filed a Memorandum in Support of the Debtor's Claim of Exemption. Diacou asserted that he had a claim against Meyers based upon an oral assignment by Meyers of a portion of the lottery proceeds to satisfy a judgment debt owed to Diacou. Diacou argued that Meyers' interest in the future lottery proceeds was excludable from the bankruptcy estate pursuant to Section 541(c)(2) of the Bankruptcy Code. Diacou alleged that a spendthrift trust was created between Meyers and the Ohio Lottery Commission when Meyers won the lottery.

Alternatively, Diacou argued that if the Court determined the proceeds to be includable in the estate, the proceeds constituted burdensome property and should be abandoned. Diacou asserted that the Bankruptcy estate would need to be kept open for over thirteen (13) years in order to properly administer the proceeds, as approximately thirteen (13) years remained in which Meyers was to receive his lottery payments.

The Trustee, CERI, and First Federal alleged that the oral assignment of the lottery proceeds to Diacou was invalid and unenforceable. They alleged that the lottery proceeds were an asset of the estate and could no longer be assigned by the Debtor without Court approval. Thus, this Court was faced with the issue of whether the lottery proceeds were property of the estate; and if they were, whether the Debtor was entitled to his claim of exemption.

## LAW

In addressing the first issue, the Court looks to Section 541 of the Bankruptcy Code, which defines what is property of the estate:

### § 541. Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such an estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case.*

(c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(a)(1) and (c)(2) (emphasis added). By a plain reading of the statute, one observes that Congress intended an all encompassing definition of what constitutes estate property. *See, also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The statute only excludes a limited number of items. Should the Court find that a spendthrift trust was created, then § 541(c)(2) may apply. The Court notes for the record that Meyers did list his lottery proceeds as property of the estate in his schedules.

■ The Court believes that the future lottery proceeds are property of the estate as the Debtor had a right to receive the proceeds as of the commencement of the case. This Court strongly agrees with the Maryland Bankruptcy Court which stated that

It is beyond question that the Debtor's interest, albeit in some respects a future interest, in the lottery winnings became property of the estate upon filing of a petition for relief under Chapter 7 of the

Bankruptcy Code. The scope of § 541(a) is broad and all embracing.... Thus, the Debtor's interest in the lottery proceeds are property of the estate subject to any valid exemptions.

*In re Miller*, 16 B.R. 790, 791 (Bkrtcy. D.Md.1982) (citations omitted) (holding that the annuity contract did not meet the Bankruptcy Code's exemption qualification that it be "on account of illness, disability, death, age, or length of service."). In another Bankruptcy decision dealing with lottery proceeds, the Indiana District Court affirmed the Bankruptcy Court's finding that the debtors' lottery winnings were an asset of the estate.

The debtors' position [that their lottery winnings were not part of the bankruptcy estate], particularly in the state of Indiana, boggles the mind from a policy perspective, and certainly offends the spirit of bankruptcy law. These debtors would wish to enjoy their windfall uninhibited by previously established debts. [The debtors] tend not, as millionaires, to evoke an image of being trapped in a pit of debt, in need of a fresh start. With the monthly income that they can rely on enjoying for the next decade and beyond, freed of the usual consumption of energy and investiture of time, it is understandable that the trustee has asserted that '[i]t would be inequitable to allow a millionaire to discharge $80,000.00 of debt." [The lottery payments] should be, and are as a matter of law and policy, included in the bankruptcy estate.

*In re Brown*, 86 B.R. 944, 947 (N.D.Ind. 1988). *See also, In re Koonce*, 54 B.R. 643 (Bkrtcy.D.S.C.1985) (holding that post-petition lottery winnings constituted property of the estate and were includable in a Chapter 13 plan as unsecured creditors could receive a 100% distribution without undue hardship on the debtors).

Having found that the lottery proceeds were includable in the bankruptcy estate, the Court does not find, however, that a spendthrift trust was created between Meyers and the Ohio Lottery Commission. Nor does the Court find that the lottery proceeds constitute an exemption under the Ohio exemptions statutes.

■ A trust is a fiduciary relationship between one party having an equitable ownership in property and another party having legal title to such property, wherein the equitable owner is entitled to the performance of certain duties and the exercise of certain powers by the legal owner. *Seymour v. Freer*, 75 U.S. (8 Wall.) 202, 19 L.Ed. 306 (1869); *In re Estate of Bicknell*, 108 Ohio App. 51, 54, 9 O.O.2d 85, 88, 160 N.E.2d 550, 552 (Ohio Ct.App.1958), *motion to certify record overruled*, October 29, 1958. For a trust to be valid, there must be an intention to create a trust and the description of the trust res and the beneficiary must be specific. A spendthrift trust exists where there is an express provision forbidding anticipatory alienations and attachments by creditors.

■ An Affidavit of Dennis Kennedy [hereinafter "Affidavit"], chief fiscal officer of the Ohio Lottery Commission, reflects that "[a]ll of the funds in the Deferred Prizes Trust Fund are pooled together for investment purposes, and are not segregated or designated in the name of any particular holder of winner lottery tickets." Affidavit of Dennis Kennedy, ¶ 11 [Attached as EXHIBIT A]. Meyers had a right to receive his winnings in annual installments paid out of the State Lottery Deferred Prizes Trust Fund, which is in the custody of the Treasurer of the State of Ohio. As stated, for a trust to be valid, a manifestation of an intent to create a trust must be present. From the affidavit, this Court cannot find that the Ohio Lottery Commission manifested an intent to create a trust with Meyers. Therefore, no trust, let alone a spendthrift trust, could exist between Meyers and the Ohio Lottery Commission. Consequently, Section 541(c)(2) of the Bankruptcy Code does not apply to this case.

■ As to whether Meyers is entitled to his claimed exemption, this Court finds that the lottery proceeds do not amount to an annuity under Ohio Revised Code Sections 2329.66(A)(10)(b), 2329.66(A)(6)(b) or 3911.-10. Again, the Court relies on the Affida-

vit. A further review of the Affidavit reflects that

> The prize money which [Meyers] had a right to receive in annual installments is paid out of the State Lottery Deferred Prizes Trust Fund in the custody of the Treasurer of the State of Ohio, and is not paid out of any pension, annuity or similar plan or contract.

> The prize money which [Meyers] has a right to receive in annual installments is not payable under any pension, annuity, or similar plan or contract, on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of any person or any of his dependents, within the meaning of Section 2329.66(A)(10)(b) of the *Ohio Revised Code.*

Affidavit of Dennis Kennedy, ¶ 14, 15.

An exemption claimed under Ohio Revised Code Section 2329.66(A)(10)(b) requires an three-part analysis: (1) a right to receive payment under an annuity or similar plan; (2) the payment must be on account of illness, disability, death, age, or length of service; and (3) the payment must be reasonably necessary for the support of the debtor or his dependents. *See,* O.R.C. § 2329.66(A)(10)(b). Since the Affidavit specifically states that the right to payment meets neither (1) nor (2) listed above, and since the Debtor could not direct the Court to any contrary authority, this Court finds that Meyers is not entitled to an exemption under Ohio Revised Code Section 2329.66(A)(10)(b).

Ohio Revised Code Section 2329.-66(A)(6)(b), read in conjunction with Section 3911.10, parallel Section 2329.66(A)(10)(b)'s three-part test: (1) an interest in an annuity or life insurance contract must exist; (2) which is payable on the life of any person; and (3) for the benefit of any spouse, child, relative, dependent or creditor. *See,* O.R.C. § 3911.10. Again, the Affidavit reflects that the method of payment does not meet any of these criteria. The Debtor did not present any concrete evidence to rebut the Affidavit. Accordingly, the Court finds that the Debtor is not entitled to exempt his lottery proceeds under Ohio Revised Code Section 2329.66(A)(6)(b).

■ Turning to the alleged assignment of the proceeds, the Court is at a loss to understand how Diacou alleges that a valid assignment of the lottery proceeds check occurred. In counsel's own brief, Diacou directs the Court's attention to Section 3770.07 of the Ohio Revised Code which provides that *"No right of any person to a prize award shall be assignable ... [but that]* any person may be awarded a prize award to which another is entitled pursuant to the order of a court of competent jurisdiction...."* O.R.C. § 3770.07(A) (emphasis added). Diacou did obtain a judgment in the Lucas County Court of Common Pleas for Fifty-five Thousand Dollars, prior to the Bankruptcy. That judgment lien filed with this Court does not reflect an assignment of the proceeds. Diacou does have a nondischargeable debt in the amount of Fifty-five Thousand Dollars ($55,000.00), plus interest, which was awarded by this Court on August 28, 1991. *See, Kypros Diacou v. William D. Meyers,* Case No. 90–0216. In that Adversary, Diacou filed a Complaint to Determine Dischargeability of Debt, alleging that Diacou made a loan to Meyers after Meyers falsely promised to repay the loan from his lottery proceeds check. Meyers admitted to making the promise, but neither the Complaint nor Meyers' Answer reflects an allegation of an assignment of the lottery proceeds. Based upon the pleadings filed in the adversary proceeding, as well as in this matter, Diacou does not have an valid assignment of the lottery proceeds. Diacou simply has a nondischargeable debt.

■ As to Diacou's argument that the lottery proceeds should be abandoned because they are burdensome, the Court believes that this is a matter for the Trustee to decide. Trustees are to have independence and discretion in managing the estate. The Court has confidence in the judgment of the Trustee in this matter and is declining to substitute itself for his judgment, at this time.

In reaching the conclusions found herein, the Court has considered all the evidence

and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Objections to the Debtor's Claim of Exemptions in the lottery proceeds be, and are hereby, Sustained.

It is FURTHER ORDERED that amount currently held in the escrow account titled "Estate of William D. Meyers" located a Ohio Citizens Bank as well as any future lottery proceeds be, and are hereby, property of the estate and are to be administered as such.

AFFIDAVIT OF DENNIS KENNEDY
STATE OF OHIO
SS:
COUNTY OF CUYAHOGA

Dennis Kennedy, having been first duly cautioned and sworn, deposes and says as follows:

1. I am the chief fiscal officer of the Ohio Lottery Commission, having its offices at 615 West Superior Avenue in Cleveland, Ohio, on which behalf I make this affidavit.

2. As the chief fiscal officer of the Ohio Lottery Commission, I am duly authorized to make this affidavit on its behalf.

3. I am relying upon my personal knowledge as the chief fiscal officer of the Ohio Lottery Commission in making this affidavit on its behalf.

4. I am an adult over eighteen (18) years of age, and am competent to testify as to all matters contained in this affidavit.

5. I am a certified public accountant duly licensed by and registered with the State of Ohio.

6. As the chief fiscal officer of the Ohio Lottery Commission, I am in charge of the finance division of the Ohio Lottery Commission, and am responsible for all matters relating to the financial administration of the Ohio Lottery Commission, including the making of any disbursements from the State Lottery Fund, the manner in which all financial transactions relating to the State Lottery Fund are to be effected and recorded, and the payment of prize awards to holders of winning lottery tickets.

7. All gross revenues received from the sales of lottery tickets, fines, fees and related proceeds are deposited in the State Lottery Gross Revenue Fund, which is in the custody of the Treasurer of State of Ohio for the use of the Ohio Lottery Commission, but is not part of the state treasury. The Treasurer of the State of Ohio invests any portion of the fund not needed for immediate use in the same manner as, and subject to all provisions of law with respect to the investment of, state funds. The Treasurer of the State of Ohio disburses money from the State Lottery Fund only on order of the Auditor of the State of Ohio, pursuant to vouchers or invoices signed by the Director of the Ohio Lottery Commission, and certified by the Chairman of the Ohio Lottery Commission.

8. All revenues of the State Lottery Gross Revenue Fund that are not paid to holders of winning lottery tickets, that are not required to meet short-term prize liabilities, that are not paid to lottery sales agents in the form of agent bonuses, commissions or reimbursements, and that are not paid to financial institutions to reimburse such institutions for sales agent non-sufficient funds, are transferred to the State Lottery Fund. Further, all investment earnings of the fund are credited to the State Lottery Fund.

9. Total disbursements for monetary prize awards to holders of winning lottery tickets and purchases of goods and services awarded as prizes to holders of winning lottery tickets must be of an amount equal, as nearly as is practicable, to fifty percent (50%) of the total revenue accruing from the sale of lottery tickets.

10. Historically, all prize investment authority for deferred prize payments have been coordinated between the Ohio Lottery Commission and the Treasurer of the State of Ohio. New legislation passed and became law on April 19, 1986 expanding the investment authority of lottery funds through the Treasurer of the State of Ohio

**864**

to authorize investment in (1) U.S. treasury bills, notes, bonds, or any other obligations or securities issued by the U.S. Treasury, or (2) bonds, notes, debentures, or any other obligations or securities issued by any federal governmental agency or instrumentality.

11. An amount sufficient to fund deferred prizes is transferred from the State Lottery Fund and credited to the Deferred Prizes Trust Fund in the Ohio State Treasury. The Treasurer of the State of Ohio, in consultation with the Ohio Lottery Commission, may invest monies contained in the Deferred Prizes Trust Fund in accordance with *Ohio Rev.Code* § 135.143 to provide all or a part of the amounts necessary to fund deferred prizes awarded by the Ohio Lottery Commission. All of the funds in the Deferred Prizes Trust Fund are pooled together for investment purposes, and are not segregated or designated in the name of any particular holder of winner lottery tickets. No monies in the Deferred Prizes Trust Fund are invested in any pension, annuity, or similar plan or contract, on account of the illness, disability, death, age or length of service of any individual, to the extent reasonably necessary for the support of any such individual or his dependents.

12. William D. Meyers, who resides at 29095 Belmont Lake Road in Perrysburg, Wood County, Ohio, won the amount of $2,010,972.00 in the Ohio Lottery drawing of April 7, 1984.

13. William D. Meyers receives annual installments of prize money in April of each year in the gross amount of $100,548.60, which installments began in April, 1984 and will continue up to and including in April, 2003.

14. The prize money which William D. Meyers has a right to receive in annual installments is paid out of the State Lottery Deferred Prizes Trust Fund in the custody of the Treasurer of the State of Ohio, and is not paid out of any pension, annuity or similar plan or contract.

15. The prize money which William D. Meyers has a right to receive in annual installments is not payable under any pension, annuity, or similar plan or contract, on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of any person or any of his dependents, within the meaning of Section 2329.66(A)(10)(b) of the *Ohio Revised Code.*

Further, affiant saith naught.

/s/ <u>Dennis Kennedy</u>
Dennis Kennedy

STATE OF OHIO
    SS:
COUNTY OF CUYAHOGA

Before me personally appeared Dennis Kennedy, chief fiscal officer for the Ohio Lottery Commission, who upon being duly sworn, deposes and says that he has read the foregoing affidavit, and that it is true as he verily believes.

Sworn to before me and subscribed in my presence this <u>5th</u> day of December, 1990.

/s/ <u>Stephen D. John</u>
Notary Public