**In re John W. HANES, Jr.,**
**Debtor-in-possession.**

**Bankruptcy No. 93–10238–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 19, 1994.

Stephen S. Mitchell, McKinley, Schmidtlein & Mitchell, Alexandria, VA, for debtor.

John G. McJunkin, Jenkins & Gilchrist, P.C., Washington, DC, for NationsBank of D.C., N.A.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The issue before the Court involves the objections of NationsBank of D.C., N.A. (the "Bank") to certain exemptions claimed by John W. Hanes, Jr. (the "Debtor") in his Amended Schedule C. Specifically, the Bank contends that the Debtor may not exempt from the bankruptcy estate two televisions, a "stereo system," and a video cassette recorder ("VCR") under the Virginia exemption laws. In addition, the Bank objects to the exemption of three retirement plans benefiting the Debtor. For the reasons set forth in this opinion, the Court overrules the objections of the Bank to the extent set forth herein.

## I.

On January 21, 1993, the Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code. At the time he filed his petition, the Debtor was 67–years–old, and was entitled to receive income from three retirement plans. The Bank is a creditor in this proceeding based on a note or notes that the Debtor co-signed in order to obtain funds for certain publishing businesses.

Approximately one month after filing his petition, the Debtor submitted his statement of affairs and schedules. Included in those documents was Schedule C, which was captioned "Property Claimed Exempt." The Debtor, however, did not list any items of property in that schedule, but reserved the right to amend it later.[1]

On June 21, 1993, the Debtor filed his Amended Schedule C, listing several items of property claimed exempt. Among the items listed were two televisions, a "stereo" (which was later shown to be a hi-fi system), and a VCR, which were claimed exempt pursuant to Va.Code. § 34–26 (Michie Supp.1993). In Amended Schedule C, the debtor reported the values of the televisions, stereo and VCR to be $250, $400 and $200, respectively.

Amended Schedule C also included the Debtor's interests in three retirement plans, which were claimed exempt pursuant to 11 U.S.C. § 541(c)(2) and Va.Code § 34–29 (Michie Supp.1993).[2] The first plan arises from the Debtor's employment with the firm Wertheim & Company. The "summary plan description" submitted by the Debtor states that Wertheim pays for the plan entirely. Debtor's Ex. F at R19. It contributes a sum of money based on actuarial calculations, and those funds are held by trustees or "fiduciaries." Id. at R19–22. The Debtor started to draw income from this pension shortly after he retired from Wertheim in 1978, and he currently receives monthly payments under the plan. See Debtor's Ex. E; Trans. at 17.

Additionally, the Debtor asserts that the Wertheim plan is a "qualified" plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). Trans. at 7, 25.[3] The summary plan description submitted by the

---

**1.** The Bank objected to Schedule C, arguing that the Debtor was not entitled to exempt any property because of his failure to list any claims there. The Court overruled the Bank's objection at a hearing on June 21, 1993, but granted the Bank leave to object to any claims set forth in Amended Schedule C.

**2.** The Debtor also sought to exempt the retirement plans under Va.Code § 34–34 (Michie

Supp.1993). At the hearing on the Bank's objection, however, the Debtor said that § 34–34 did not apply to this case. Transcript of September 21, 1993, at 6 [hereinafter "Trans."].

**3.** For a discussion on what it means to be "ERISA-qualified," see infra part IV.A. of this opinion.

Debtor confirms at least that ERISA governs various aspects of the Wertheim plan. It states that ERISA grants plan participants certain rights, and imposes duties on fiduciaries who administer the plan. Debtor's Ex. F at R19–20. The Bank has not disputed the plan's status under ERISA.

The second and third plans arise from the Debtor's service as a non-employee director with the Olin Corporation and with the Squibb Corporation, which is now known as the Bristol–Myers Squibb Company. Both corporations established these plans exclusively for their non-employee directors. The Debtor concedes that both plans are not "qualified" under ERISA. Trans. at 7. In addition, because the Debtor never paid money into the plans and because no money was ever set aside to fund them, the Debtor describes the plans as "naked contractual obligations" to pay benefits in the future. *Id.* at 8.

Turning to the details of each plan, the document relating to the Olin plan states that the plan's purpose "is to provide eligible members of [Olin's] Board of Directors ... with retirement income in consideration of their valued service on the Board." Debtor's Ex. A ¶ 1.2. The Olin plan provides for payments to be made on a quarterly basis during the course of the former director's life, and those payments are not to be drawn from any segregated or funded source. *See id.* ¶¶ 3.1, 3.2, 5.3. According to the document submitted by the Debtor, the plan is administered by Olin's vice president of human resources or another officer having substantially similar responsibilities. *Id.* ¶ 5.1.

Additionally, the terms of the Olin plan specify that the rights of a former director to receive payments are no greater than those of a general creditor. *Id.* ¶ 5.3. The Olin plan also contains a spendthrift or non-alienation provision stating that "[n]o right to payment or any other interest under the [p]lan shall be assignable or subject to attachment, execution or levy of any kind." *Id.* ¶ 5.4. The Debtor retired from Olin's board of directors in January 1993, and started to receive plan payments after that date.

Like the Olin plan, the plan established by Squibb pays retirement income on a quarterly basis. *See* Debtor's Ex. B ¶ IV. The source of these payments is the company's general revenues; no payments derive from any insurance annuity contract or trust arrangement qualifying for tax benefits under the Internal Revenue Code. *Id.* ¶ II. In addition, the terms of the plan do not require the Bristol–Myers Squibb Company to establish any segregated fund to ensure that the benefits will be paid. *Id.* Another similarity with the Olin plan is that the Squibb plan gives a corporate officer the responsibility to manage it. In this instance, the company's general counsel administers the plan. *Id.* ¶ VIII.

Like the Olin plan, former directors under the Squibb plan have no superior right to their benefits; the plan specifies that the payment of retirement income is subordinate to the claims of the company's general creditors. *Id.* ¶ II. Finally, like the Olin plan, the Squibb plan contains a non-alienation provision stating that a non-employee director's rights under the plan "shall not be subject to assignment, encumbrance, garnishment, attachment or charge, whether voluntary or involuntary." *Id.* ¶ VI. The Debtor started to receive plan payments shortly after he retired from Squibb's board of directors in 1990.

We note that the objecting party, NationsBank, has "the burden of proving that the exemptions are not properly claimed." Fed. R.Bankr.P. 4003(c). Moreover, "[a] preponderance of the evidence is necessary to meet this burden." *In re Magnus,* 84 B.R. 976, 978 (Bankr.E.D.Pa.1988). With regard to the electronic equipment, the Bank contends that two televisions, a stereo and a VCR are not "necessary" household furnishings, and therefore may not be claimed exempt under Virginia law. With regard to the retirement plans, the Bank asserts that the spendthrift provisions in those plans are not enforceable under Virginia law, so they cannot be excluded from the bankruptcy estate. We will address each of the Bank's objections *seriatim.*[4]

---

4. The Bank also objected to the retirement plans on grounds that the Debtor listed their value as

## II.

We first turn to whether the Debtor may exempt from the estate two televisions, a stereo and a VCR having a total value of $850. Section 522 of the Code sets forth certain interests in property that the debtor may exempt. *See* 11 U.S.C. § 522. That same section, however, permits states to "opt out" of § 522, and to require their residents to exempt property according to their own exemption laws. *See* 11 U.S.C. § 522(b)(1). Virginia is among those states that have opted out of the federal exemption scheme. *See* Va.Code § 34–3.1 (Michie 1990). Accordingly, we must direct our attention to controlling Virginia law.

Among the several provisions that allow exemptions in Virginia is section 34–26, which is known as the "poor debtors' exemption." Section 34–26 provides in pertinent part:

> [E]very householder shall be entitled to hold exempt from creditor process the following enumerated items ...
>
> (4a) *All household furnishings* including, *but not limited to*, beds, dressers, floor coverings, stoves, refrigerators, washing machines, dryers, sewing machines, pots and pans for cooking, plates, and eating utensils, *not to exceed $5,000 in value*.

Va.Code § 34–26(4a) (Michie Supp.1993) (emphasis added).

■ The Bank contends that the language of section 34–26 does not entitle the Debtor to exempt two televisions, a stereo and a VCR. It argues that these items are not the type of property that is necessary to run a

household, unlike beds, dressers, stoves, eating utensils and the other items listed in the statute. It therefore implies that televisions, VCRs and stereos are luxury items that no debtor in bankruptcy should rightfully retain.

We do not read section 34–26 so narrowly. In interpreting this statute, this Court looks first to its plain language. *See Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). We note that the language of section 34–26 itself is quite broad. Section 34–26 allows debtors to exempt from creditor process "*all* household furnishings" including the items listed in the statute, so long as their value does not exceed $5,000. The term "furnishings" does not necessarily exclude televisions, stereos and VCRs because section 34–26 includes "non-furniture" items—such as eating utensils and plates—as examples of "household furnishings."

Also, absent from the statute's language is the term "necessary," which was once included in an earlier version of section 34–26.[5] The Virginia General Assembly apparently decided, however, not to include the term "necessary" in the current version. Thus, we do not view exemptions under the current statute as being limited to items necessary for maintaining a household.

■ In addition, this Court notes that "[l]ongstanding Virginia precedent establishes that exemption statutes are to be construed liberally." *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir.1984); *see, e.g., South Hill Production Credit Ass'n v. Hudson*, 174 Va. 284, 6 S.E.2d 668 (1940).

---

"unknown" in Amended Schedule C. During the hearing, Debtor's counsel submitted to the Court his estimates of the present value of each plan. *See* Debtor's Reply to Objection of NationsBank of D.C., N.A. to Debtor's Claim of Exemptions at 4–5. Using the annuity table set forth in Va.Code § 55–269.1 (Michie Supp.1993), Debtor's counsel estimated the present values of the Wertheim, Olin and Squibb plans to be $10,643.49, $143,000.00 and $178,750.00, respectively. *Id.* The Bank has neither disputed nor presented evidence contesting the Debtor's estimates. Accordingly, we need not reach the issue of valuation.

5. An earlier version of the poor debtors' statute permitted debtors to exempt from creditor process

[a]ll *necessary* wearing apparel of the debtor and his family, all beds, bedsteads and bedding *necessary* for the use of such family, two dressers or two dressing tables, wardrobes, chifforobes or chests of drawers or a dresser and a dressing table; carpets, rugs, linoleum or other floor covering; and all stoves and appendages put up and kept for the use of the family not exceeding three.

Va.Code § 34–26(4) (Michie Supp.1983) (emphasis added) (current version at Va.Code § 34–26 (Michie Supp.1993)). Additionally, at least one court in Virginia declined to adopt a restrictive view of the term "necessary." *See In re Perry*, 6 B.R. 263 (Bankr.W.D.Va.1980) (finding a mink coat to be "necessary wearing apparel" under § 34–26).

Nevertheless, "[t]he liberal construction required to be given to our constitutional and statutory provisions does not authorize the courts to reduce or enlarge the exemption, or to read into the exemption laws an exception not found there." *Tignor*, 729 F.2d at 981 (quoting *Goldburg Co. v. Salyer*, 188 Va. 573, 582, 50 S.E.2d 272 (1948)). Given the broad terms of section 34–26, we do not view the *Tignor* court's caveat as a barrier to allowing the exemption of two televisions, a stereo and a VCR. The only operative limit here is the $5,000 ceiling imposed by section 34–26(4a). Because the aggregate value of items claimed under section 34–26(4a) is $1,850,[6] well below $5,000, the Court overrules the Bank's objection concerning the electronic equipment.

### III.

The next issue presented is whether the Debtor's interests in three retirement plans are excluded from the bankruptcy estate. Section 541(a) of the Bankruptcy Code includes in the estate *"all* legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). "The scope of § 541(a) is broad and all embracing." *In re Miller*, 16 B.R. 790, 791 (Bankr.D.Md.1982).

■ Notwithstanding its broad scope, § 541 excludes certain interests in property from the bankruptcy estate. One exclusion that the Debtor relies upon is § 541(c)(2), which states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). Accordingly, a beneficial interest in a spendthrift trust is not estate property when the non-alienation provision is enforceable under governing state law. *See McLean v. Central States, S.E. & S.W. Pension Areas Fund (In re McLean),*

762 F.2d 1204, 1206–07 (4th Cir.1985); *Allen v. Wilson*, 3 B.R. 439, 441 (Bankr.W.D.Va. 1980). Also, the United States Supreme Court has held that "applicable nonbankruptcy law" includes ERISA. *Shumate*, — U.S. at —, 112 S.Ct. at 2247. Thus, a non-alienation provision enforceable under ERISA will exclude a beneficial interest in an "ERISA-qualified" pension plan. *See Id.*

### IV.

The Debtor asserts that the Wertheim plan is ERISA-qualified, so his interests in that plan are excluded from the estate pursuant to the Supreme Court's decision in *Shumate*. Accordingly, we look to ERISA to evaluate the Debtor's argument.

### A.

■ Responding to the growth of private employee benefit plans in the United States, Congress enacted ERISA to "correct the perceived inadequacies of many benefit plans, prevent employer abuses, and assure stability of benefits...." *In re Conroy*, 110 B.R. 492, 495 (Bankr.D.Mont.1990). The reach of ERISA is extensive because it generally extends to employee benefit plans established or maintained by employers or employee organizations affecting commerce. *See* 29 U.S.C. § 1003. As defined by the statute, "employee benefit plan" includes employee pension benefit plans providing retirement income to employees, as the Wertheim plan does here. *See* 29 U.S.C. § 1002(2)(A) & (3).[7]

■ To protect employees participating in pension plans, ERISA imposes various reporting, vesting, funding, and insurance requirements. *See generally* 29 U.S.C. §§ 1021–1309. To encourage compliance with ERISA, Title II of ERISA amended the Internal Revenue Code to provide tax bene-

---

**6.** In addition to the electronic equipment worth $850, the Debtor claimed "miscellaneous household items" worth $1,000. These valuations were not disputed by the Bank.

**7.** Under ERISA, there are two types of "employee benefit plans": employee welfare benefit plans and employee pension benefit plans. 29

U.S.C. § 1002(3). The former includes plans that provide medical, disability, or vacation benefits. *Id.* § 1002(1). The latter provide retirement income to employees or defer employee income "for periods extending to the termination of covered employment or beyond...." *Id.* § 1002(2)(A).

fits to both employers and employees. *See Conroy,* 110 B.R. at 495; *In re Komet,* 104 B.R. 799, 803–04 (Bankr.W.D.Tex.1989). Qualifying for these tax benefits requires a pension plan to scale what has been described as a "legal mountain," i.e., the provisions set forth in the Internal Revenue Code. *See In re Hall,* 151 B.R. 412, 418 n. 15 (Bankr.W.D.Mich.1993) (referring to the numerous subsections under 26 U.S.C. § 401(a)).

▮▮▮ To comply with ERISA and qualify for tax benefits, a pension plan must, among other things, include a restriction prohibiting assignment and alienation of pension benefits. 29 U.S.C. § 1056(d)(1);[8] 26 U.S.C. § 401(a)(13);[9] 26 C.F.R. § 1.401(a)–13(b)(1) (1993).[10] "These provisions each exhibit 'a strong public policy against the alienability of an ERISA plan participant's benefits.'" *Anderson v. Raine (In re Moore),* 907 F.2d 1476, 1480 (4th Cir.1990) (quoting *Smith v. Mirman (In re Mirman),* 749 F.2d 181, 183 (4th Cir.1984)).

▮▮▮ Nevertheless, it is not enough under § 541(c)(2) of the Bankruptcy Code merely to require pension plans to include non-alienation clauses. Section 541(c)(2) will shield a beneficial interest in a trust only when the non-alienation provision is *enforceable* under applicable non-bankruptcy law. The Supreme Court has concluded that non-alienation provisions in ERISA plans are enforceable because (1) ERISA requires plan trustees or fiduciaries to comply with the documents and instruments governing the plan, and (2) ERISA allows certain parties to file suits to enjoin conduct violating either ERISA or the terms of the pension plan. *Shumate,* —— U.S. at ——, 112 S.Ct. at 2247

(citing 29 U.S.C. §§ 1104(a)(1)(D), 1132(a)(3) & (5)).[11] Because non-alienation provisions in "ERISA-qualified" plans are enforceable, beneficial interests in those plans may be excluded from the estate under § 541(c)(2).

We then are required to turn to the issue of what it means to be "ERISA-qualified." Although the Supreme Court in *Shumate* used the term to describe the pension plan there, it did not define the characteristics a plan must possess to "qualify" under ERISA. In addition, the term is not defined by either ERISA, the Internal Revenue Code, or the Bankruptcy Code. Under one definition, the term could be construed to mean that the plan is merely subject to ERISA. Alternatively, it may mean that the plan is subject to ERISA *and* has met all the Internal Revenue Code requirements to qualify for tax benefits.

The ambiguity has troubled those who have interpreted *Shumate* as holding that only ERISA-qualified plans are excluded from the estate. *See Hall,* 151 B.R. at 417. This is due to the fact that different interpretations may lead to different consequences. Assuming *arguendo* that the term "qualified" means that the plan satisfies both ERISA and the Internal Revenue Code, it has been suggested that, under this interpretation, creditors could reach plan benefits if the employer failed to amend the plan to comply with a change in the tax law. *See id.* at 418 n. 17 (quoting Christy & Skeldon, *Shumate and Pension Benefits in Bankruptcy,* 2 J.Bankr.L. & Prac. 719, 725 (1992)).

One post-*Shumate* decision addressing the issue, *In re Hall, supra,* held that a plan is "qualified" when it (1) is governed by

---

**8.** This provision states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

**9.** This provision reads in pertinent part: "A trust shall not constitute a qualified trust under this section unless the plan of which the trust is a part provides that benefits provided under the plan may not be assigned or alienated."

**10.** This provision states: "[A] trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at

law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process."

**11.** The Supreme Court also noted that, in a prior decision, it had "vigorously ... enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the statutory bar." *Shumate,* —— U.S. at ——, 112 S.Ct. at 2247 (citing *Guidry v. Steel Metal Workers Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990)).

ERISA, (2) has qualified for tax benefits, and (3) includes a non-alienation provision. *Id.* at 419–20. Among the reasons for the holding in *Hall* was the *Shumate* Court's references to § 401(a)(13) of the Internal Revenue Code and to 26 C.F.R. § 1.401(a)–13(b)(1), which require tax-qualified plans to include a restriction on transfer. The court in *Hall* reasoned that the *Shumate* Court would not have cited the tax code and tax regulations if it believed that the term "qualified" did not include qualifying for benefits under the tax laws. *Id.* at 419. *See also In re Sirois,* 144 B.R. 12, 14 (Bankr.D.Mass.1992) (implying that a pension plan is qualified when it complies with ERISA and the Internal Revenue Code).

■ This Court declines to adopt the approach taken in *Hall* and *Sirois* because too much emphasis is placed on the technical requirements of the Internal Revenue Code, while failing to place sufficient emphasis on the Bankruptcy Code. Section 541(c)(2) of the Bankruptcy Code excludes a beneficial interest in a trust when the trust contains an enforceable restriction on transfer. The references in *Shumate* to the tax code simply acknowledge that the tax code requires, in conjunction with ERISA, pension plans to contain non-alienation provisions. *See* —— U.S. at ——, 112 S.Ct. at 2247.[12] It is the presence of a non-alienation provision that is important under § 541(c)(2), and ERISA requires such provisions and enforces them. 29 U.S.C. §§ 1056(d), 1132(a)(3) & (5), *cited in Shumate,* —— U.S. at ——, 112 S.Ct. at 2247. Accordingly, we conclude that for purposes of § 541(c)(2), a plan is "qualified" under ERISA if it is (1) governed by ERISA

and (2) includes a non-alienation provision that is (3) enforceable under ERISA.

■ Although the Debtor has asserted that the Wertheim plan is ERISA-qualified, evidence of the plan's status under ERISA is, at best, scant. Instead of presenting the Court with the actual instrument governing the Wertheim plan, the Debtor submitted only a "summary plan description" that makes no reference as to whether the plan includes a non-alienation provision. *See* Debtor's Ex. F. The Debtor's "summary", nevertheless, suggests that the plan is governed by ERISA. *Id.* at R19–21. Furthermore, the Bank, which has the burden of proof in this proceeding, has neither disputed nor presented evidence challenging the plan's "qualified" status. Based on the foregoing, we conclude that the Wertheim plan is "ERISA-qualified." As such, it is presumed to have the requisite non-alienation clause that excludes the debtor's interest from the estate.

### B.

The Bank suggests that even if the Wertheim plan is ERISA-qualified, its restriction on alienation is not enforceable under *Virginia* law. Trans. at 11–12, 22. To support its position, the Bank relies on a Virginia statute stating that the rule enforcing spendthrift or non-alienation provisions in Virginia does not apply to any "interest in a trust, contract, or other fund maintained in conjunction with an *employee benefit plan, as defined [by ERISA],* or a similar plan or arrangement. . . ." Va.Code § 55–19(B) (Michie Supp.1993) (emphasis added).[13]

---

12. Likewise, we disagree with the *Hall* court's conclusion that the Court of Appeals for the Fourth Circuit has "implied" that an ERISA plan is qualified when it satisfies all the provisions of 26 U.S.C. § 401(a). *See Hall,* 151 B.R. at 420–21 n. 20 (citing *Anderson v. Raine (In re Moore),* 907 F.2d 1476, 1480 (4th Cir.1990)). Like the Supreme Court in *Shumate,* the court of appeals was merely pointing out the coordinate provisions of ERISA and the tax code that require pension plans to contain non-alienation provisions. *See Moore,* 907 F.2d at 1480. Moreover, in the opinion, the court of appeals used the term "ERISA qualification and tax exempt status,"

which suggests that a plan may be "ERISA-qualified" even though it does not qualify for tax benefits. *See Id.* at 1480–81.

13. Section 55–19(B) reads in pertinent part:

The exception for spendthrift trusts shall not apply to an interest in a trust, contract, or other fund maintained in conjunction with an employee benefit plan, as defined in § 1002(3) of Title 29 of the United States Code, or a similar plan or arrangement regardless of whether the beneficiary may claim the exemption provided under § 34–34.

Va.Code § 55–19(B) (Michie Supp.1993).

Section 55–19(B), however, does not control here. "When Congress enacted ERISA ... it intended to thoroughly occupy the field of private employee benefit plans to the exclusion of all state law and regulations." *Komet,* 104 B.R. at 802. Section 514(a) of ERISA declares that, with certain exceptions, ERISA preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). A state law "relates to" an employee benefit plan when it "has a connection with *or reference to* such a plan." *Mackey v. Lanier Collection Agency & Serv.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)) (court's emphasis). Moreover, ERISA "displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Id.* (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985)). In *Mackey,* the Supreme Court dealt with a Georgia statute prohibiting garnishment of "[f]unds or benefits of ... [an] employee benefit plan ... subject to ... the federal Employee Retirement Income Security Act of 1974...." *Id.* at 828 n. 2, 108 S.Ct. at 2184 n. 2 (quoting Ga.Code Ann. § 18–4–22.1 (1982)). The Court determined that the statute "related to" ERISA plans because the "statute's express reference to ERISA plans suffices to bring it within the federal law's pre-emptive reach." *Id.* at 830, 108 S.Ct. at 2186.

Applying these principles to the case at bar, we find that section 55–19(B) of the Virginia Code closely resembles the Georgia statute preempted in *Mackey* because both statutes refer to ERISA plans. Moreover, the Virginia statute presents a stronger case for preemption because its provisions conflict with ERISA directly. ERISA shields benefi-

cial interests by requiring employee plans to include non-alienation provisions. Section 55–19(B) purports to remove that protection by stating that the rule enforcing spendthrift or non-alienation clauses does not apply ·to ERISA plans. Based on the foregoing, the Court concludes that the provisions of the ERISA statute enacted by the Congress of the United States preempt section 55–19(B) of the Virginia Code. Accordingly, the Debtor's interest in the Wertheim plan is excluded from the estate pursuant to § 541(c)(2) and *Shumate.* Accordingly, the Bank's objections regarding the Wertheim plan are overruled.

### V.

The Olin and Squibb plans, which benefit only non-employee directors, present a different problem in that they are not—according to the Debtor—qualified under ERISA. The Debtor asserts that the non-alienation provisions in the Olin and Squibb plans exclude his interests in those plans from the estate pursuant to § 541(c)(2). Again, relying on section 55–19(B) of the Virginia Code, the Bank contends that the plans are part of the estate because Virginia law will not enforce their non-alienation provisions. Although we agree with the Bank that the plans are part of the estate, we do so for different reasons.

As mentioned above, the Bankruptcy Code excludes from the estate "a beneficial interest of a debtor *in a trust*" when the trust instrument contains a restriction on transfer enforceable under applicable non-bankruptcy law. 11 U.S.C. § 541(c)(2) (emphasis added). To determine whether these plans are trusts, we look to state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).[14]

The elements for establishing a valid trust in Virginia include "a competent settlor and trustee, an ascertainable res, and certain beneficiaries." *Allen v. Wilson (In re Wil-*

---

**14.** One question that can arise in this context is whether the Court should look to the law of another state instead of Virginia law. *See e.g., Tyler v. Putman (In re Putman),* 110 B.R. 783, 793–98 (Bankr.E.D.Va.1990). In the case at bar, the parties have relied on both federal and Virgi-

nia law to advance their respective positions. Furthermore, they have not raised the issue of whether the law of another state applies. As a consequence, we need not reach the question of whether the law of another state should govern here.

*son)*, 3 B.R. 439, 442 (Bankr.W.D.Va.1980). The trust must arise "as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959); *see also In re Riley*, 91 B.R. 389, 390 (Bankr. E.D.Va.1988) (holding that there was no spendthrift trust because the debtor failed to "show the existence of the necessary intent to create a trust"). One characteristic of a trust that is relevant here is that a trust beneficiary "has an equitable interest in the subject matter of the trust, and in its proceeds if it is disposed of, which gives him priority over the claims of the general creditors of the trustee...." Restatement (Second) of Trusts § 74 cmt. a (1959).

 Applying these principles to the instant case, we conclude that neither the Olin plan nor the Squibb plan constitutes a trust arrangement. First, neither plan sets aside an ascertainable fund or res from which plan payments can be made. The Olin plan expressly states that Olin's obligations to pay plan benefits "shall not be funded in any matter." Debtor's Ex. A ¶ 5.3. Even more indicative is the Squibb plan, which states that plan benefits "will be paid from the [c]ompany's general revenues as payments become due ... [and] will not be funded in advance through an IRS qualified trust or through insurance annuity contracts...." Debtor's Ex. B ¶ II. The Squibb plan provides further that the company is not required to "establish any special or separate fund or to make any other segregation of assets to assure the payment of benefits under the [p]lan...." *Id.* Based on these provisions, we conclude that neither plan possesses an ascertainable res.

Furthermore, we find no intent on the part of Olin or Squibb to create a trust arrangement. As we noted earlier, trust beneficiaries have rights or claims superior to those of the trustee's general creditors. Here, however, the alleged "trustees" are either officers or employees of Olin and Squibb, and the rights of beneficiaries are either equal or subordinate to the claims of the companies' general creditors. *See* Debtor's Ex. A ¶¶ 5.1, 5.3; Debtor's Ex. B ¶¶ II, VIII. Both the absence of a trust res and the status of plan beneficiaries vis-a-vis the general creditors lead the Court to conclude that

neither plan manifests an intent to create a trust.

Without the requisite elements and intent, the Olin and Squibb plans are not trusts. Thus, they cannot come within the exclusion of § 541(c)(2) of the Bankruptcy Code. Rather, these plans are bare contractual obligations, which courts have found, in similar situations, to be part of the bankruptcy estate. *See, e.g., In re Meyers*, 139 B.R. 858, 860–61 (Bankr.N.D.Ohio 1992) (finding as estate property the debtor's right to receive lottery winnings in installments over time); *In re Gee*, 124 B.R. 581, 584–85 (Bankr. N.D.Okla.1991) (finding as estate property the debtor's right to receive payments under an annuity contract); *In re Connally*, 94 B.R. 908, 910–11 (Bankr.W.D.Tex.1989) (concluding that debtor's interests in a deferred compensation plan for non-employee directors were part of the estate).

 Finding that the Debtor's interests in the Olin and Squibb plans are estate property, we now address whether section 34–29 of the Virginia Code exempts a portion of the income he receives under those plans. Section 34–29 allows debtors to exempt at least 75 percent of their "aggregate disposable earnings" from creditor process. Va.Code § 34–29(a) (Michie Supp.1993). Under the statute, the term "earnings" includes "periodic payments pursuant to a pension or retirement program." *Id.* § 34–29(d)(1). Given the express terms of the statute, the Court concludes that the Debtor is entitled to exempt the portion of income allowable under section 34–29.

## VI.

For the foregoing reasons, the Court concludes that the Debtor may exempt the electronic equipment pursuant to Va.Code 34–26(4a), and a portion of the income he receives under the Olin and Squibb plans pursuant to Va.Code § 34–29. Furthermore, the Debtor's interests in the Wertheim plan are excluded from the estate pursuant to § 541(c)(2) of the Bankruptcy Code. The Bank's objections are overruled, and an appropriate order will be entered.