**In re Maureen BENNETT, Debtor.**

**Bankruptcy No. 894–84993–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

June 27, 1995.

Heath S. Berger, Fischoff, Gelberg & Director, Garden City, NY, for debtor.

R. Kenneth Barnard, Rosen & Barnard, Huntington, NY, for trustee.

### DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court[1] is a motion by the Trustee for an order denying the exemption claimed by the Debtor as to certain annuities (the "Motion"). The relief is opposed. For the reasons set forth below, the Court holds that the Motion by the Trustee for an order

---

**1.** The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

denying the exemption claimed by the Debtor is denied.

### RELEVANT FACTUAL BACKGROUND

On September 1, 1994, the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code ("Code"). In Debtor's Schedule C, an exemption is claimed pursuant to New York Debtor and Creditor Law section 282 as to certain annuities. Debtor holds an interest in two retirement annuities with College Retirement Equities Fund ("CREF") and two retirement annuities with Teachers Insurance and Annuity Association ("TIAA").

The value of the CREF Retirement Unit—Annuity Certificate Number Q–058071–5 ("CREF Plan") was in excess of $60,000.00, as of June 30, 1994. The value of the TIAA Retirement Annuity Contract Number B–058071–8 ("TIAA Plan") was in excess of $45,000.00, as of June 30, 1994. The value of the TIAA Group Supplemental Retirement Annuity Certificate Number K–501444–0 ("TIAA Supplemental Plan") was in excess of $1,100.00, as of June 30, 1994. The value of the CREF Group Supplemental Retirement Unit—Annuity Certificate Number J–501444–2 ("CREF Supplemental Plan") was in excess $1,100.00,[2] as of June 30, 1994.

At the hearing held on November 29, 1994, concerning the Motion, the Debtor raised for the first time an issue as to whether retirement annuities are excluded from the bankruptcy estate pursuant to section 541(c)(2) and Debtor was directed to file a memorandum of law in support of its position.

The Trustee contends that the Court should not consider the documents attached by the Debtor to its memorandum of law which was submitted to the Court on December 23, 1994 (the "Memorandum") in that the certificates relating to the CREF and TIAA Plans were being provided to the Court for the first time after the November 29, 1994 hearing. Inasmuch as the CREF and TIAA Plan certificates contain information having a significant impact on the outcome of the Motion, and the Trustee has had an opportunity to respond to the memorandum and attachments, the Court will consider said attachments.

### LEGAL DISCUSSION

The issue before the Court is whether the Debtor's interests in four retirement plans are excluded from the property of the estate pursuant to 11 U.S.C. section 541(c)(2).

Section 541(a)(1) of the Code provides that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994).

Section 541(c)(2) contains an exception to this definition which states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2) (1994).

The Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) in discussing section 541(c)(2) stated that "[t]he natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."

The Supreme Court, in *Patterson,* held that the debtor's interest in an ERISA–qualified pension plan was excluded from the debtor's estate in that the anti-alienation provision contained therein constituted "an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." *Patterson,* 504 U.S. at 760, 112 S.Ct. at 2248. In *Patterson,* the anti-alienation provision contained in the pension plan provided that " '[n]o benefit, right or interest' of any participant 'shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or other legal, equitable

---

**2.** The most recent valuation of the annuity accounts that was provided to the Court was as of June 30, 1994.

or other process.'" *Patterson,* 504 U.S. at 759–60, 112 S.Ct. at 2247.

The Supreme Court in *Patterson* used the term "ERISA-qualified" without specifying what elements are essential for a plan to constitute an "ERISA-qualified" plan. Cases decided after *Patterson,* reflect a disagreement among bankruptcy courts as to what the Supreme Court intended by the use of the term "ERISA-qualified." *See In re Hanes,* 162 B.R. 733, 739 (Bankr.E.D.Va. 1994); *In re Hall,* 151 B.R. 412, 417 (Bankr. W.D.Mich.1993).

In the post-*Patterson* case, *In re Hall,* 151 B.R. 412, 419 (Bankr.W.D.Mich.1993) the court held that in order to constitute an "ERISA-qualified" plan, a plan must (1) be tax qualified under Internal Revenue Code section 401(a), (2) be subject to ERISA, and (3) include an anti-alienation provision. *See also In re Sirois,* 144 B.R. 12, 14 (Bankr. D.Mass.1992).

In the case *In re Hanes,* 162 B.R. 733, 740 (Bankr.E.D.Va.1994) the court used a different approach and held that a plan is "ERISA-qualified" if it is (1) governed by ERISA and (2) includes a non-alienation provision that is (3) enforceable under ERISA.

This Court adopts the approach taken in *Hanes* and declines to follow the approach taken in *Hall.*

As stated by the *Hanes* court:

This Court declines to adopt the approach taken in *Hall* and *Sirois* because too much emphasis is placed on the technical requirements of the Internal Revenue Code, while failing to place sufficient emphasis on the Bankruptcy Code. Section 541(c)(2) of the Bankruptcy Code excludes a beneficial interest in a trust when the trust contains an enforceable restriction on transfer. The references in *Shumate* to the tax code simply acknowledge that the tax code requires, in conjunction with ERISA, pension plans to contain non-alienation provisions.

*In re Hanes,* 162 B.R. 733, 740 (Bankr. E.D.Va.1994) (citing *Patterson v. Shumate,*

504 U.S. 753, 759, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992)).

Therefore, the Court concludes that a plan is "ERISA-qualified" for purposes of section 541(c)(2) if it is (1) governed by ERISA and (2) includes an anti-alienation provision that is (3) enforceable under ERISA.

The Debtor asserts and the Trustee does not dispute that the retirement plans at issue are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. sections 1002(2)(A), (3) and 1003(a)(1).

By order dated April 13, 1995, Debtor was directed to file documentation establishing the tax status of the plans at issue. In response to the Court's order, on May 17, 1995, Debtor filed with the Court a letter dated May 8, 1995 from counsel for TIAA/ CREF which states that the retirement plans are governed by ERISA and section 403(b) of the Internal Revenue Code.

The TIAA and CREF Supplemental Plans provide:

The choice of Income Option, Annuity Starting Date, Beneficiary or Second Annuitant/Participant, Method of Payment of the Death Benefit, and the availability of Lump-sum Benefits and Loans/Transfers as set forth in the Certificate are subject to the applicable restrictions, distribution requirements, and incidental benefit requirements of ERISA and the IRC, and any rulings and regulations issued under ERISA and the IRC.

Based on the record,[3] the Court concludes that the CREF and TIAA Plans and the TIAA and CREF Supplemental Plans are governed by ERISA.

The retirement plans at issue contain anti-alienation provisions as required by 29 U.S.C. section 1056(d)(1) which provides: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

The Supreme Court in *Patterson,* has concluded that anti-alienation provisions in ERISA-qualified plans are enforceable so as

---

**3.** The record before the Court consists of the papers filed by the parties concerning the Motion

and the transcript of the November 29, 1994 hearing.

to constitute restrictions on transfer enforceable under applicable non-bankruptcy law for purposes of section 541(c)(2) of the Code.

Plan trustees or fiduciaries are required under ERISA to discharge their duties 'in accordance with the documents and instruments governing the plan.' 29 U.S.C. § 1104(a)(1)(D). A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to 'enjoin any act or practice' which violates ERISA or the terms of the plan. 29 U.S.C. §§ 1132(a)(3) and (5). Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar.

*Patterson v. Shumate,* 504 U.S. 753, 760, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992).

For the reasons set forth, the Court holds that the CREF and TIAA Plans and the TIAA and CREF Supplemental Plans are "ERISA-qualified" in that they are governed by ERISA and contain anti-alienation provisions that are enforceable under ERISA and therefore are excluded from the Debtor's estate pursuant to 11 U.S.C. section 541(c)(2).

Accordingly, the Motion by the Trustee is denied.

**SO ORDERED.**