**In re James M. CRAIG, Debtor.**

**Kip M. KALER, Trustee/Appellant,**

v.

**James M. CRAIG, Debtor/Appellee.**

Civil. No. A3–96–127.

United States District Court,
D. North Dakota,
Southeastern Division.

Jan. 16, 1997.

Kip M. Kaler, Kaler Law Office, Fargo, ND, for Trustee/Appellant.

Roger J. Minch, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, for Debtor/Appellee.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

The trustee appeals from Orders of the United States Bankruptcy Court dated July 16, 1996 (order on remand from this court, finding Craig's interest in certain pension plans to be excluded from the bankruptcy estate) and August 8, 1996 (denying the trustee's motion for new trial or amendment of judgment and motion to submit additional evidence). This court held oral argument on the appeal on December 13, 1996 and took the matter under advisement.

### Standard of Review

In reviewing bankruptcy orders, this court acts as an appellate court. *In re Muncrief,* 900 F.2d 1220, 1224 (8th Cir.1990). The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard. Id. Conclusions of law are reviewed de novo. *Id.*

### Background

This is the second appeal from Craig's bankruptcy case. The first appeal dealt with a subissue of the question raised in this appeal, that is, whether Craig's interests in certain pension plans are excluded from the bankruptcy estate. The relevant facts are set out in this court's order of July 15, 1996 in case # A3-96-18 and are briefly reviewed here.

In 1976, Craig executed pension and profit-sharing plans and accompanying trust agreements, as president of James M. Craig, M.D., P.C. (in which he was the sole shareholder) and as trustee of the plans. The plans included other employee-participants until the professional corporation ceased business several years later. All participants' interests vested at that time and all were paid out except Craig's and his ex-wife's. The corporation was involuntarily dissolved in 1988. The plans became "wasting" or "frozen" plans. They were not promptly amended to comply with the 1984 Internal Revenue Code (I.R.C.) amendments, and Internal Revenue Service 5500 forms were not filed for the plans for a number of years. Craig executed amendments to the plan documents in 1995, but has never withdrawn or altered the status of the plan assets.

■■■ As explained in the previous case, a debtor's beneficial interest in a trust is excluded from the bankruptcy estate if it is subject to a transfer restriction enforceable under "applicable non-bankruptcy law." 11 U.S.C. § 541(c)(2). "Applicable non-bankruptcy law" includes the Employee Retirement Income Security Act (ERISA), so that if an "ERISA qualified" plan contains an enforceable anti-alienation provision, the property is excluded from the bankruptcy estate. *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992).

In its first appealed order, the bankruptcy court held that Craig's plans were not ERISA qualified because they were not subject to ERISA. This court reversed, holding that Craig's plans are subject to ERISA, and remanded to the bankruptcy court to determine whether they are ERISA qualified. The bankruptcy court determined that the plans are ERISA qualified and thus excluded from the bankruptcy estate. This court affirms the bankruptcy court's ruling, but on a separate legal basis.

### Analysis

As noted above, if an ERISA qualified pension plan contains an enforceable anti-alienation provision, the property is excluded from the bankruptcy estate. *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). The dispute in both this appeal and the first one has centered on the meaning of the term "ERISA qualified." The *Shumate* Court did not address what makes a plan ERISA qualified,

leaving lower courts to wrestle with the definition. As explained in an article cited by numerous post-*Shumate* court opinions, that definition is far from obvious:

> The term "ERISA qualified" ... is not a term of art and is not defined in the Bankruptcy Code, the IRC, or ERISA. Furthermore, it is not even a term used by employee benefit practitioners....
>
> Employee benefits practitioners consistently use the phrase "qualified plan" as synonymous with "tax qualified plan." They use the phrase to refer to a pension, profit-sharing, stock bonus, or similar plan that satisfies the numerous requirements of IRC Section 401(a). A plan that satisfies IRC Section 401(a) is called a "qualified plan" because the section itself refers to the trusts of such plans as "qualified trust" and because satisfaction of that section's requirements "qualifies" the trust under such a plan as tax-exempt. Under the IRC a plan is "qualified" only if it satisfies numerous provisions of law.
>
> By contrast, ERISA does not speak of qualification. Plans do not qualify under ERISA, at least not in the sense they qualify for special treatment under the IRC.... A plan is subject to ERISA solely on the basis of the type of benefits it provides. Beyond that there is nothing under ERISA similar to the multitudinous requirements under the IRC. Accordingly, employee benefits practitioners refer to "plans subject to ERISA," "plans governed by ERISA," or "ERISA plans," but they do not generally refer to "ERISA qualified" plans.

J. Gordon Christy and Sabrina Skeldon, *Shumate and Pension Benefits in Bankruptcy*, 2 J. Bankr.L. & Prac. 719, 724–25 (1992). Courts have considered several possible meanings of the term "ERISA qualified":

> Arguably, the *Shumate* Court may have intended any one of three interpretations for the term "ERISA qualified" plan: (1) a plan subject to ERISA; (2) a plan subject to ERISA which contains an anti-alienation

clause; or (3) a plan that is tax-qualified under I.R.C. § 401(a), subject to ERISA, and has an anti-alienation provision as required by ERISA § 206(d)(1).

*In re Hall*, 151 B.R. 412, 418 (Bankr. W.D.Mich.1993) (citing Christy & Skeldon at 725).

One line of cases, led by *Hall*, has adopted a three-part test requiring a plan to: 1) be tax qualified under I.R.C. § 401(a), 2) be subject to ERISA, and 3) include an anti-alienation provision. *Id.* at 419. The *Hall* court emphasized "[s]ome seemingly cryptic language from *Shumate* itself." *Id.* In addressing whether the anti-alienation provisions in the debtor's plans satisfied the Bankruptcy Code's requirements for exclusion, the *Shumate* Court had noted:

> Section 206(d) (1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," ... clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust. The coordinate section of the Internal Revenue Code, 26 U.S.C. § 401(a)(13), states as a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," and thus contains similar restrictions. See also 26 CFR § 1.401(a)–13(b)(1) (1991).

*Shumate*, 504 U.S. at 758, 112 S.Ct. at 2247 (quoted in part in Hall, 151 B.R. at 419). From this language, the *Hall* court reasoned:

> If "ERISA qualified" is determined without regard to tax law, why would the Court cite the Internal Revenue Code and a tax regulation? A reasonable reading of this language leads one to conclude that the unanimous *Shumate* Court requires an "ERISA qualified" plan must satisfy both the Internal Revenue Code and ERISA.

*Hall*, 151 B.R. at 419.[1] Some courts have adopted Hall's three-part test. *See, e.g., In re Orkin*, 170 B.R. 751, 754 (Bankr.D.Mass.

---

[1] The *Hall* court never reached the question of I.R.C. qualification, however, because it found the plans were not subject to ERISA. *Id.* at 421 & n. 23. At least one court has therefore characterized *Hall*'s adoption of the three-part test as dictum. *See S.E.C. v. Johnston*, 922 F.Supp. 1220, 1225 (E.D.Mich.1996).

1994) (adopting Hall's test but not reaching the I.R.C. prong because the plans were not subject to ERISA); *In re Nolen,* 175 B.R. 214, 218 (Bankr.N.D.Ohio 1994) (adopting *Hall's* three-part test and finding that debtor's plans satisfied all three parts); *In re Foy,* 164 B.R. 595, 597 (Bankr.S.D.Ohio 1994) (adopting Hall's test but addressing only the anti-alienation provision prong). *Cf. In re Lane,* 149 B.R. 760, 763–66 (Bankr.E.D.N.Y. 1993) (not expressly adopting a three-part test, but finding that debtor's plans were neither tax qualified nor subject to ERISA).

Interestingly, the I.R.C. prong of *Hall's* test was not the determinative factor in any of the above cases; that is, none of them would have had a different result had the I.R.C. prong been deleted. These courts were not faced with the following scenario:

> [I]f a creditor were attempting to reach benefits in a plan that had once been qualified under IRC Section 401(a) but that had become disqualified by reason of the employer's failure to amend the plan to include a new provision required by a change in the law, the creditor could argue that the [*Shumate* Court] used the phrase "ERISA qualified" plan to mean a plan that was both qualified under IRC Section 401(a) and subject to ERISA. However, Section 206(d) of ERISA operates completely independently of the IRC qualification requirements, and since the IRC does not itself confer substantive rights on participants, a debtor could argue the plan still qualified under ERISA.

Christy & Skeldon at 725. But that is the scenario this court now faces. Tax qualification for Craig's plans under I.R.C. § 401(a) is in some doubt because the plans were not promptly amended to comply with the 1984 I.R.C. amendments, and certain forms were not filed.[2] The bankruptcy court found on remand that the plans were I.R.C. qualified, but this court raised the question at oral argument whether I.R.C. qualification was indeed a necessary component of ERISA qualification.

Another line of cases has rejected the I.R.C. prong of Hall's three-part test and instead applied a two-part test, requiring only that plans be subject to ERISA and contain anti-alienation PROVISIONS. *See e.g., In re Hanes,* 162 B.R. 733, 740 (Bankr. E.D.Va.1994). The *Hanes* court "decline[d] to adopt the approach taken in Hall ... because too much emphasis is placed on the technical requirements of the Internal Revenue Code, while failing to place sufficient emphasis on the Bankruptcy Code." Id. at 740. The court explained:

> Section 541(c) (2) of the Bankruptcy Code excludes a beneficial interest in a trust when the trust contains an enforceable restriction on transfer. The references in *Shumate* to the tax code simply acknowledge that the tax code requires, in conjunction with ERISA, pension plans to contain non-alienation provisions. It is the presence of a non-alienation provision that is important under § 541(c)(2), and ERISA requires such provisions and enforces them.

*Id.* (citation omitted) Other courts have agreed with this analysis. *See, e.g., In re Bennett,* 185 B.R. 4, 6 (Bankr.E.D.N.Y.1995) (declining *Hall's* approach and adopting *Hanes'* approach); *In re Kaplan,* 162 B.R. 684, 691 (Bankr.E.D.Pa.1993) ("In order to determine whether the instant Plan is 'ERISA qualified,' we do not believe that it is necessary for this court to ascertain whether the Plan is 'tax qualified.' "), *aff'd,* 189 B.R. 882 (E.D.Pa.1995).

In adopting the *Hanes* test, some courts have emphasized that the purpose of complying with I.R.C. § 401(a) in its entirety is only to maintain tax-exempt status and has nothing to do with the enforceability of an anti-alienation provision under ERISA. *See, e.g., S.E.C. v. Johnston,* 922 F.Supp. 1220, 1225–

---

2. After Craig filed bankruptcy, the plans were submitted to the IRS Closing Agreement Program (CAP). At the time of oral argument, the IRS had not issued a decision on the CAP application. Thus, the IRS has never "disqualified" Craig's plans under the I.R.C. *See In re Baker,* 195 B.R. 386, 393 (Bankr.N.D.Ill.1996) (holding

that a plan was tax qualified because "the IRS ha[d] never found that the Plan failed to qualify for tax exempt status" and because it contained anti-alienation language as required by I.R.C. § 401(a)(13)). In any case, an IRS determination as to qualification for tax purposes would not bind this court in the bankruptcy context.

26 (E.D.Mich.1996) (citing numerous decisions which "treat[ed] 'qualification' under ERISA and the I.R.C. separately"). An ERISA plan will by definition comply with the I.R.C. at its inception. As one court explained, "the reason for [an] ERISA qualified plan is the tax relief which is the usual inducement. Tax deferral approved by the IRS as stated in Hall is necessary to the definition, but the provisions of I.R.C. § 401 are solely for tax qualification under the Internal Revenue Code...." *In re Watson,* 192 B.R. 238, 242 (Bankr.D.Nev.1996).[3]

Moreover, unlike ERISA, the I.R.C. does not provide for *enforcement* of anti-alienation provisions, which is crucial under § 541(c)(2) of the Bankruptcy Code. *See, e.g., In re Witwer,* 148 B.R. 930, 937 (Bankr.C.D.Cal. 1992). ERISA allows a plan participant, beneficiary, fiduciary, or the Secretary of Labor to file a civil action to "enjoin any act or practice" which violates ERISA or the terms of a plan. 29 U.S.C. §§ 1132(a)(3), (5). The I.R.C. provisions of § 401(a), on the other hand, "relate solely to the criteria for tax qualification under the Internal Revenue Code" and "[a]lthough a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce." *Id. Accord In re Acosta,* 182 B.R. 561, 565 (N.D.Cal.1994).[4] The *Hall* court's analysis of *Shumate* ignores this fact. Indeed, the *Shumate* Court noted that ERISA imposes transfer restrictions, acknowledged

that the "coordinate section" of the I.R.C. "contains similar restrictions" (the point emphasized in *Hall*) but went on to say that "these transfer restrictions are 'enforceable' as required by § 541(c)(2)." 504 U.S. at 758, 112 S.Ct. at 2247 (citing ERISA's enforcement remedies in 29 U.S.C. §§ 1132(a)(3), (5)). In referring to " '[t]hese' transfer restrictions" the *Shumate* Court could only have been referring to ERISA, not the I.R.C., because only ERISA contains enforcement remedies.

■ This court was not squarely faced with a choice between Hall's three-part test and Hanes' two-part test in the first appeal. The bankruptcy court had ruled that Craig's plans were not ERISA qualified because they were not "subject to ERISA," a requirement of both tests. This court reversed, holding only that the plans were "subject to ERISA," and remanding to the bankruptcy court to determine whether they were "ERISA qualified." In so doing, this court cited Hall and specified that both I.R.C. qualification and the existence of anti-alienation language were still at issue. But upon further analysis as set out above, this court must conclude that the Hanes test reflects the better-reasoned approach and that I.R.C. qualification is not necessary for ERISA qualification. The plans need only contain anti-alienation provisions and be subject to ERISA. The trustee concedes that Craig's plans, as originally executed in 1976, and as amended in 1995, contain the requisite anti-alienation language.[5] That the plans are "subject to

3. This is also the position taken in the leading commentary:

> The term "ERISA qualified" plan, can be most reasonably interpreted as meaning "plan subject to ERISA." While it is also possible that the court could be referring to a plan that is both qualified under IRC Section 401(a) and subject to or governed by ERISA, that would not be as reasonable because the bankruptcy exemption addressed by the *[Shumate]* Court concerns Section 206(d)(1) of ERISA, which is completely independent of the qualification requirements under the IRC. For purposes of ERISA, the qualification requirements under the IRC are irrelevant. Accordingly, since the decision seems to be based on the Bankruptcy Code and ERISA alone, use of the word "quali-

fied" to refer to any IRC requirements under Section 401(a) would not seem reasonable. Christy & Skeldon at 725–26 n. 25.

4. At least one court has questioned whether a bankruptcy trustee has standing to challenge a plan's tax qualification. *In re Foy,* 164 B.R. 595, 598 n. 12 (Bankr.S.D.Ohio 1994).

5. It is therefore unnecessary to revisit the question of which plan documents are in effect. The bankruptcy court, relying on this court's findings, held on remand that the 1995 plan documents had amended and restated the 1976 plan documents. This court had stated that *"If the 1995 documents have any effect,* they 'amend' and 'restate' the plans." Order of July 15, 1996, at 3 (emphasis added).

ERISA" was established on the last appeal.[6] Therefore, the plans are ERISA qualified.

■ The trustee also raises equitable arguments against exclusion of the plan assets from the bankruptcy estate. The trustee cites *In re Harris*, 188 B.R. 444 (Bankr. M.D.Fla.1995), wherein the debtor's pension plans were treated as property of the estate because the debtor as trustee of the plans had egregiously mismanaged them and put the assets to his own use as beneficiary:

> [T]he debtor and his wife made frequent loans to themselves, ... and none of the investments had even a faint resemblance to a prudent investment ... [T]he debtor generally failed to manage the plan assets as an independent fiduciary charged with the management of other people's money. It is the general failure to administer the plan in compliance with ERISA and the Internal Revenue Code, and the use of the plan as a personal bank which justified the treatment of this plan as property of the estate.

*Id.* at 450–51. In this case, the trustee asserts that one of Craig's plan investments lost money and that the plan report lists receivables from the former corporation which would constitute a prohibited transaction. The debtor refutes these points, but in any case, the trustee has not alleged conduct which would rise to the level of mismanagement and misuse present in *Harris*. Craig has not made personal loans to himself from the trust assets, nor used the trust as a "personal bank" as did the debtor in *Harris*. Moreover, even if prohibited transactions took place, "this would not compel a finding that the plan is no longer an ERISA-qualified plan." *In re Baker*, 195 B.R. 386, 393 (Bankr.N.D.Ill.1996).

■ The trustee also argues that Craig's plans are not ERISA qualified because Craig serves as both trustee and beneficiary, having effective control over the plan assets for his own use. However, after *Shumate*, it is no longer necessary to determine whether an ERISA qualified plan would additionally meet the requirements for exclusion under state trust law. *See, e.g.. Baker*, 195 B.R. at 394 ("[O]nce it has been determined that a plan is ERISA-qualified, the inquiry ends, and it is inappropriate for the courts to examine the extent to which the Debtor controlled the assets within the Plan."). In other words, "[t]he legal issue is not whether [the debtor] had the right to demand and obtain the funds as a beneficiary, but whether until he had obtained them, ERISA's restriction on transfer continued to apply." *In re Holst*, 192 B.R. 194, 199 (Bankr. N.D.Iowa), *aff'd*, 197 B.R. 856 (N.D.Iowa 1996). In this case, Craig has the right to obtain his vested interest in the plans as a beneficiary, but the fact is that he has not exercised that right. The funds remain in the plans, subject to the anti-alienation provisions. Craig has not gained any present benefit as beneficiary which would sacrifice protection of the funds in bankruptcy. As the Baker court explained,

> This result at first may seem counterintuitive in the bankruptcy context, because funds to which a debtor may have some limited access are now excluded from the estate. Under traditional common law trust principles and bankruptcy law, this would not be the case. However, the fact that these funds are excluded from the estate reflects a reconciliation between the congressional intent to protect retirement funds, the congressional desire for consistency in the treatment of assets both within and outside the bankruptcy context, and the broad concept of property of the estate.

195 B.R. at 391 (citing *Shumate*, 504 U.S. at 762, 112 S.Ct. at 2249).

It was the trustee's burden to prove that Craig's plans were not properly claimed as exempt. Fed. R. Bankr.P. 4003(c). This court must agree with the bankruptcy court that the trustee has not met this burden. Likewise, the bankruptcy court, in its discretion, properly denied the trustee's Rule 59 motion for a new trial or to submit additional evidence.

---

**6.** The trustee did not move for reconsideration of this court's previous order, nor did he appeal the decision. Although the trustee devotes much of his brief to arguing that the plans are not "subject to ERISA" this court will not revisit that issue here.

*Conclusion*

**IT IS ORDERED** that the decisions of the Bankruptcy Court are **AFFIRMED** and the case is hereby **DISMISSED.**